IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CONNIE WARNER, | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| v. | § | No. 3:23-CV-1286-E |
| | § | |
| EQUIFAX INFORMATION | § | |
| SERVICES LLC, et al., | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

On March 6, 2024, Defendant Trans Union LLC ("Trans Union") filed a

motion to dismiss Plaintiff Connie Warner's claims on the pleadings pursuant to

Fed. R. Civ. P. 12(c).  (*See* Dkt. No. 32 ("Mot.").)  Warner filed a response to the

motion on April 16, 2024.  (*See* Dkt. No. 41 ("Resp.").)  Trans Union filed its reply

on May 2, 2024.  (*See* Dkt. No. 49 ("Reply").)

United States District Judge Ada Brown referred the motion to the

undersigned magistrate judge to recommend a disposition of the motion.  (*See* Dkt.

No. 51.)  For the reasons stated below, the undersigned recommends that the District

Judge **GRANT** the motion and dismiss this action.

**I.  BACKGROUND**

This suit arises out of Warner's Chapter 13 bankruptcy discharge.  Warner

secured a mortgage on her property at 2832 Sun Valley Dr., Plainfield, IL 60586.

(Compl. ¶ 11.)  Pacific Union Financial, LLC ("Pacific Union") later acquired the

lender's interest in Warner's mortgage loan.  (*Id.* ¶ 12.)  Within a year of Pacific

Union's acquisition of the mortgage, on December 3, 2018, Warner filed for Chapter

13 bankruptcy in the Northern District of Illinois.  (*Id.* ¶ 13, at ECF p. 29.)

The bankruptcy court confirmed Warner's Chapter 13 payment plan on April

12, 2019.  (*Id.* ¶ 14.)  Nationstar subsequently bought Pacific Union, acquiring

Warner's mortgage in the process.  (*Id.* ¶¶ 15-16.)  According to Warner, "timely

monthly mortgage payments were made to the Pacific Union/Nationstar mortgage

accounts" throughout the Chapter 13 bankruptcy.  (*Id.* ¶ 21.)

On May 16, 2022, Warner was discharged from Chapter 13 bankruptcy.

(Compl. ¶ 17.)  The mortgage was excepted from the discharge, meaning the

bankruptcy proceedings did not extinguish the mortgage.  (*Id.*)  Glenn Stearns, the

trustee for Warner's Chapter 13 bankruptcy, filed a Chapter 13 Standing Trustee's

Final Report and Account on July 5, 2022, and Warner's bankruptcy was terminated

the following day.  (*Id.* ¶¶ 19-20.)  Warner continues to live in the home and states

she makes timely monthly mortgage payments and plans to continue doing so.  (*Id.*

¶¶ 23-24.)

In January 2023, Warner obtained her three-bureau credit report.  (Compl.

¶ 24.)  Trans Union, a consumer reporting agency ("CRA"), is one of the three

bureaus that provides information on her credit report.  Warner alleges that Trans

Union inaccurately "reported the Pacific Union mortgage account as being in a wage

earner plan, and with references to her bankruptcy."  ( *Id.* ¶ 29.)  According to

Warner, this is incorrect because she "complied with the terms of the chapter 13

bankruptcy plan, was successfully discharged—excepted the secured Pacific

Union/Nationstar mortgage debt from being discharged, therefore, any remarks and/or references to Plaintiff's chapter 13 bankruptcy should have been removed from the Pacific Union/Nationstar Mortgage tradelines after the Bankruptcy was discharged." (*Id.*)

After noticing this alleged inaccuracy, Warner sent a dispute letter to Trans Union. In this letter, Warner explained that she believed the account was incorrectly reported and that all references to the Chapter 13 bankruptcy should be deleted. (*Id.* at ECF p. 75.) Trans Union responded to Warner's dispute on March 28, 2023. (*Id.* ¶ 52.) In its response, Trans Union informed Warner that it deleted the tradeline from the credit report. (*Id.*) Warner obtained an updated credit report on May 9, 2023, and confirmed that Trans Union had deleted the tradeline from the report. (*Id.* ¶ 53.) Warner alleges that this response nonetheless "failed to remedy the inaccuracies within the Pacific Union tradeline[.]" (*Id.* ¶ 54.)

Warner filed this lawsuit on June 7, 2023, alleging that Trans Union violated the Fair Credit Reporting Act ("FCRA"). (*See* Compl.) She alleges violations under §§ 1681e(b) and 1681i. (*See id.*) Trans Union filed the instant motion for judgment on the pleadings on March 6, 2024. (*See* Mot.)

## II. LEGAL STANDARDS

A motion under Rule 12(c) "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Hebert Abstract v.*

*Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (internal citations omitted).

The standard for deciding a motion under Rule 12(c) is the same as a motion to

dismiss under Rule 12(b)(6). *Gentilello v. Rege*, 627 F.3d 540, 543–44 (5th Cir. 2010).

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a

short and plain statement of the claim showing that the pleader is entitled to relief."

Fed. R. Civ. P. 8(a)(2). "In deciding a Rule 12(b)(6) motion to dismiss, the court

evaluates the sufficiency of [the plaintiff's] complaint by 'accept[ing] all well-pleaded

facts as true, viewing them in the light most favorable to the plaintiff." *Bramlett v.*

*Med. Protective Co. of Fort Wayne, Ind.*, 855 F. Supp. 2d 615, 618 (N.D. Tex. 2012)

(first alteration added, internal quotation marks omitted) (quoting *In re Katrina Canal*

*Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). To state a claim upon which relief

can be granted and defeat a Rule 12(b)(6) motion, a plaintiff must plead "enough

facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir.

2008). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual

content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The

court must accept well-pleaded facts as true and view them in the light most

favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th

Cir. 2007). However, the court does not accept as true "conclusory allegations,

unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484

F.3d 776, 780 (5th Cir. 2007) (citation omitted). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted).

In ruling on a Rule 12(b)(6) motion, the court limits its review to the face of the pleadings. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *see also Beasley v. Greenlee*, No. 3:22-CV-00532-X-BT, 2024 WL 3851382, at *3-4 (N.D. Tex. July 25, 2024) (applying Rule 12(b)(6) standards to a Rule 12(c) motion), *adopted*, 2024 WL 3851599 (N.D. Tex. Aug. 16, 2024). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). The ultimate question is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002). At the motion to dismiss stage, the court does not evaluate the plaintiff's likelihood of success. It only determines whether the plaintiff has stated a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977). Therefore, to survive a Rule 12(c) motion, a plaintiff's complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Beasley*, 2024 WL 3851382, at *4 (citing *Twombly*, 550 U.S. at 570).

## III. ANALYSIS

The FCRA was enacted to impose the requirement "that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information[.]"  15 U.S.C. § 1681(b). Warner alleges Trans Union violated two provisions of the FCRA: §§ 1681e(b) and 1681i.  (Compl. at 18, 20.)  Section 1681e(b) requires a CRA to "follow reasonable procedures to assure maximum possible accuracy of the information" in a consumer's report.  15 U.S.C. § 1681e(b).  Section 1681i requires a CRA to "conduct a reasonable reinvestigation" if "the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer[.]"  15 U.S.C. § 1681i(a)(1)(A).

Warner alleges that Trans Union violated the FCRA because it (1) inaccurately reported the Pacific Union Mortgage as "being in a wage earner plan, and with references to her bankruptcy[,]" (Compl. ¶ 29), and (2) failed to correct the alleged inaccuracy once informed of it, (*id.* ¶ 93).  Trans Union argues that Warner's claims fail for three reasons: first, Warner has not pleaded a factual inaccuracy; second, Warner "has not sufficiently pleaded that Trans Union failed to maintain reasonable procedures or conduct a reasonable reinvestigation;" and, third, Warner has not sufficiently pleaded a willfulness claim.  (Mot. at 1-2.)

**A.   Warner does not meet the factual inaccuracy threshold requirement for her claims under the FCRA.**

To prevail on a claim "under either Section 1681e(b) or Section 1681i, [a plaintiff] must prove that [her] consumer reports included inaccurate information." *McDonald v. Equifax Inc.*, No. 3:15-CV-3212-B, 2017 WL 879224, at \*6 (N.D. Tex. Mar. 6, 2017) (internal citations omitted).  "The FCRA's accuracy requirement in the Fifth Circuit mandates CRAs to preclude both technically inaccurate information and technically accurate information that could otherwise mislead a third party." *Bray v. Transunion, LLC*, No. 2:23-CV-197-Z-BR, 2024 WL 4150454, at \*2 (N.D. Tex. Sept. 11, 2024) (citing *Sepulvado v. CSC Credit Services, Inc.*, 158 F.3d 890, 895 (5th Cir. 1998) ("A credit entry may be 'inaccurate' within the meaning of [Section 1681e(b)] either because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.")).

Trans Union posits that Warner fails at this prerequisite step to plead a factual inaccuracy because she "presented a legal dispute regarding the bankruptcy treatment of the Account that Trans Union is not required to resolve; and [because] omission of a tradeline from her credit is not an inaccuracy."  (Mot. at 5.)

**1.   Warner fails to allege a factual inaccuracy.**

Although the Fifth Circuit has not expressly addressed whether CRAs need to investigate legal disputes, other federal courts "overwhelmingly agree that the FCRA only requires CRAs to investigate factual inaccuracies; they need not resolve legal

disputes over an underlying debt." *Estrada v. Experian Info. Sols., Inc.*, 670 F. Supp. 3d 412, 419 (W.D. Tex. 2023) (collecting cases). Similarly, the Fifth Circuit has yet to state precisely "where the line exists between legal and factual disputes in the FCRA context[.]" *Id.* Consequently, courts in this circuit have turned to other circuits for guidance. *See e.g.*, *id.* at 419-20 (looking to the Seventh Circuit for guiding principles and analyzing cases from other circuits); *Bray*, 2024 WL 4150454, at *2 (citing to the Second, Seventh, Tenth, and Eleventh Circuits).

The Seventh Circuit, in *Chuluunbat v. Experian Info. Sols., Inc.*, 4 F.4th 562 (7th Cir. 2021), analyzed the boundary between "law" and "fact" in the FCRA context. *Id.* at 566-69 (recognizing "a dichotomy between factual inaccuracies that consumer reporting agencies are statutorily obligated to reinvestigate, and 'legal inaccuracies' which are outside the competency of the consumer reporting agencies"). "The paradigmatic example of a legal dispute is when a consumer argues that although [her] debt exists and is reported in the right amount, it is invalid due to a violation of law." *Id.* at 567. Conversely, "examples of factual inaccuracies include the amount a consumer owes, and what day a consumer opened an account or incurred a payment." *Id.* at 568. The Seventh Circuit concluded that "the central question is whether the alleged inaccuracy turns on *applying* law to facts or simply *examining* the facts alone." *Id.* However, the *Chuluunbat* court noted that "[a] legal question may also be resolved as a matter of fact if a tribunal—such as a court or arbitrator—has adjudicated the matter." *Id.*

Trans Union argues that Warner's dispute boils down to "ask[ing] Trans Union to evaluate the scope of her bankruptcy discharge; to apply sections 1322(a)(2), 1322(b)(5), and 1328(a)(1) of the Bankruptcy Code; and to determine whether the [Pacific Union Mortgage] was discharged or excepted." (Mot. at 8.) Consequently, it argues that the issue is legal because it requires applying the law to the facts of Warner's case. Warner argues instead that the bankruptcy court had already resolved all legal issues, so Trans Union, which had access to the final discharge order, could read the order to find the fact that the mortgage was excepted. (*See* Resp. at 8.)

Unlike the quintessential examples of legal and factual issues discussed above, the mortgage's status after the bankruptcy case is not so easily classified as legal or factual. Warner's claim that Trans Union inaccurately reported the status of her mortgage does not require Trans Union to resolve arguments about the validity of the mortgage, but it also is not so purely factual and objectively determined as, for example, the amount owed on a mortgage. Considering the applicable authority, the undersigned concludes Warner's claims present the former. In arguing that the mortgage status post-bankruptcy is a factual issue, Warner leans heavily on the bankruptcy court's discharge order and Trustee's Final Report. She contends that Trans Union could simply review those documents to determine that the mortgage was excepted. (Resp. at 8, 14, 17.) Neither document, however, clearly states that the Pacific Union Mortgage was excepted from the discharge. (*See* Compl. at ECF p. 37-45.) In addition, the bankruptcy discharge order states that "[m]ost debts are

covered by the discharge, but not all[,]" (*id.* at ECF p. 37), and encourages recipients

to consult an attorney to determine the exact effect of the discharge "[b]ecause the

law is complicated," (*id.* at ECF 38).

Warner additionally suggests that Trans Union should have known the debt

was excepted because "[r]ead in concert, Sections 1322(a)(2), 1322(b)(5), and

1328(a)(1) of the Bankruptcy Code, bar discharging home mortgage debts in a

Chapter 13 Bankruptcy." (Compl. ¶¶ 18, 32.) Because most residential mortgage

debts are not discharged in Chapter 13 bankruptcy, Warner contends that Trans

Union should have known as a factual matter that the mortgage was excepted. Even

if such debts normally are not discharged, courts have stated that "requiring a third

party such as a credit bureau to determine whether a specific account was discharged

in a particular consumer's Chapter 13 bankruptcy would impose an unfairly heavy

burden on that party." *Hupfauer v. Citibank, N.A.*, No. 16 C 475, 2016 WL 4506798,

at *7 (N.D. Ill. Aug. 19, 2016) (citing *Childress v. Experian Info. Sols., Inc.*, 790 F.3d

745, 747 (7th Cir. 2015)). In *Hupfauer*, the court also noted that "the only practical

means to determine whether a particular debt is discharged is by searching a

consumer's actual bankruptcy court file and scouring all the filings, requiring the

third party to consult with an attorney to determine whether a certain account may

fall into one of the many exceptions to discharge as set forth in 11 U.S.C. § 1328."

*Id.* (cleaned up). The undersigned agrees.

Warner's claim that Trans Union incorrectly reported information on her

credit report about the status of her mortgage vis-à-vis bankruptcy proceedings

presents a dispute over the legal ramifications of her bankruptcy, not a factual

inaccuracy. Her claim therefore fails to meet a threshold question of her FCRA

claim. The Court should dismiss Warner's FCRA claims.

>    **2.    Trans Union's later omission of the Pacific Union Mortgage does not render the credit report inaccurate under the FCRA.**

Additionally, Warner's complaint suggests that her credit report was still

inaccurate after Trans Union removed the account. (*See* Compl. ¶ 54 (stating that

Trans Union "failed to remedy the inaccuracies within the Pacific Union

tradeline[.]").) In her response, however, Warner states that she "never claimed,

alleged, or pled that her credit report is inaccurate because the Pacific Union

tradeline is not present[.]"[1] (Resp. at 11.)

To the extent Warner intended to allege the omission of information about the

mortgage renders the credit report inaccurate, such a claim fails as a matter of law.

"An omission of a particular obligation from a credit report is not an FCRA

violation." *Coyle v. Experian Info. Sols., Inc.*, No. 3:19-CV-02645-M, 2020 WL

3052228, at *2 (N.D. Tex. June 7, 2020) (collecting cases). "A number of trial

courts, including one in this district, have held that a consumer reporting agency is

not required to include a particular account in a credit report." *Id.* Accordingly,

Warner cannot plausibly plead a violation of the FCRA by Trans Union based on

the omission.

---

[1] A few pages later, however, Warner seems to go back to her original position that Trans Union's deletion of the Pacific Union Mortgage tradeline caused the report to be incomplete and misleading, thus violating § 1681e(b). (Resp. at 14-15.)

Therefore, the factual inaccuracy element rests on the pre-dispute report referencing the Chapter 13 bankruptcy in the Pacific Union Mortgage. As explained above, Warner failed to meet this requirement because, to the extent the information provided is inaccurate, it is a legal, not factual, inaccuracy.

### 3.    Amendment of the complaint is unnecessary here.

Rule 15(a)(2) of the Federal Rules of Civil Procedure states that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). However, Rule 15(a) is not without limitation, and the decision to allow amendment of a party's pleadings is within the sound discretion of the court. *Foman v. Davis*, 371 U.S. 178, 182 (1962). "[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

When deciding whether to grant leave to amend, the court considers "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman*, 371 U.S. at 182. If the complaint, as amended, would be subject to dismissal, then amendment is futile and the court is within its discretion to deny leave to amend. *Ariyan, Inc. v. Sewerage & Water Bd. of New Orleans*, 29 F.4th 226, 229 (5th Cir. 2022). The "'futility standard' is 'the same standard of legal sufficiency as

applies under Rule 12(b)(6).'" *Mornes v. Valdez*, 414 F. Supp. 3d 888, 891 (N.D. Tex.

2019) (quoting *Stripling v. Jordan Production Co., LLC*, 234 F.3d 863, 873 (5th Cir.

2000)).

The undersigned finds leave to amend would be futile because Warner cannot

allege an actionable inaccuracy by pleading additional facts. As explained above,

factual inaccuracy is a threshold requirement for both of Warner's FCRA claims,

and her underlying complaint is about a *legal* inaccuracy. No amendment or

additional facts pleaded by Warner would change the underlying legal inaccuracy

into a factual one. Thus, because any amendment would be subject to dismissal—

and therefore be futile—the Court need not allow Warner to file an amended

pleading before dismissing her claim.

**B.    Even if Warner pleaded a factual inaccuracy, Trans Union is entitled to judgment on the pleadings on Warner's 15 U.S.C. § 1681e(b) claim.**

Even assuming that Warner adequately pleaded a factual inaccuracy, she fails

to sufficiently establish that the inaccuracy was due to Trans Union's failure to

follow reasonable procedures to assure maximum possible accuracy. "To state a

cause of action under 15 U.S.C. § 1681e(b), a plaintiff 'must establish that

(1) inaccurate information was included in [her] credit report; (2) the inaccuracy was

due to [defendant's] failure to follow reasonable procedures to assure maximum

possible accuracy; (3) [plaintiff] suffered injury; and (4) [her] injury was caused by

the inclusion of the inaccurate entry.'" *Hammer v. Equifax Info. Servs., LLC*, No. 3:18-

CV-1502-C, 2019 WL 7602463, at *2 (N.D. Tex. Jan. 16, 2019) (citing *Norman v.*

*Experian Info. Sols., Inc.*, 2013 WL 1774625, at *3 (N.D. Tex. Apr. 25, 2013)), *aff'd sub*

*nom. Hammer v. Equifax Info. Servs., L.L.C.*, 974 F.3d 564 (5th Cir. 2020).

Section 1681e(b) of the FCRA provides that "[w]henever a consumer

reporting agency prepares a consumer report it shall follow reasonable procedures to

assure maximum possible accuracy of the information concerning the individual

about whom the report relates."  15 U.S.C. § 1681e(b).  However, "[t]his provision

does not hold a CRA strictly liable for all inaccuracies."  *Hammer v. Equifax Info.*

*Servs., L.L.C.*, 974 F.3d 564, 568 (5th Cir. 2020).  A plaintiff "must also set forth

allegations sufficient to support an inference that th[e] inaccuracy was due to

[defendant's] failure to follow reasonable procedures."  *Green v. Innovis Data Sols.,*

*Inc.*, No. 3:20-CV-01614-L, 2021 WL 4244779, at *4 (N.D. Tex. Sept. 17, 2021).

"Under § 1681e(b), a plaintiff must demonstrate that an inaccuracy in her credit

report resulted from negligent or willful failure to use reasonable procedures when

the report originally was prepared, not upon reinvestigation."  *Waggoner v. Trans*

*Union, LLC*, No. CIV.A. 302CV1494G, 2003 WL 22220668, at *6 (N.D. Tex. July

17, 2003) (citing *Sepulvado*, 158 F.3d at 896).

Warner has not alleged any facts to support her allegation that the inaccuracy

in the original report was due to Trans Union's failure to follow reasonable

procedures.  Warner relied on conclusory statements that Trans Union "fail[ed] to

establish or follow reasonable procedures to assure maximum possible accuracy[,]"

(Compl. ¶ 89), and "Trans Union knew or should have known [Warner's] account

status in relation to her bankruptcy was inaccurate," (*id.* ¶ 93).  These statements do

not provide sufficient support for an inference that any inaccuracy was due to Trans Union's failure to follow reasonable procedures.  *See Green*, 2021 WL 4244779, at *4.

Moreover, Warner fails to allege any facts that support her injury claims. Warner makes a general claim that she "suffered damages, including, but not limited to, denial in attempts to refinance, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials." (Compl. ¶ 94.)  Warner did not set forth sufficient facts from which the court can reasonably infer that Trans Union violated her rights under 15 U.S.C. § 1681e(b). *See Green*, 2021 WL 4244779, at *4.

In view of the foregoing, Warner has not sufficiently pleaded a claim under 15 U.S.C. § 1681e(b), and the Court should dismiss her claim.

**C.    Even if Warner pleaded a factual inaccuracy, Trans Union is entitled to a judgment on the pleadings on Warner's claim under 15 U.S.C. § 1681i.**

As with the preceding claim, even if Warner successfully pleaded that the alleged inaccuracy in her credit report was a factual one, her allegations fall short of plausibly pleading a § 1681i claim.  To assert a claim under 15 U.S.C. § 1681i, a plaintiff must allege that "(1) [s]he disputed the completeness or accuracy of an item of information contained in [her] consumer file at [defendant] and notified [defendant] directly of that dispute; (2) [defendant] did not reinvestigate free of charge and either record the current status of the disputed information or delete the item from the file in the manner prescribed by Section 1681i(a)(5) within the

statutory period; (3) [defendant's] noncompliance was negligent or willful;

(4) [plaintiff] suffered injury; and (5) [plaintiff's] injury was caused by [defendant's]

failure to reinvestigate and record the current status of the disputed information or

delete the item from the file." *Hammer*, 2019 WL 7602463, at *2 (citing *Waggoner*,

2003 WL 22220668, at *9).

Here, Warner acknowledges that she sent Trans Union a letter disputing the

information on her Pacific Union Mortgage tradeline. (Compl. at ECF p. 75.)

Therefore, to successfully plead her claim, Warner must additionally set forth at least

sufficient facts to support the requirements that Trans Union failed to investigate free

of charge and either update the status of the dispute or delete the disputed

information from the credit report in accordance with § 1681i(a)(5). *Green*, 2021 WL

4244779, at *5.

*Green* is instructive here. In *Green*, the court addressed a plaintiff's conclusory

and contradictory allegations regarding the reinvestigation. *Id.* at 5. Notably, the

court pointed out plaintiff's conclusory statements such as "Defendant 'fail[ed] to

conduct a lawful reinvestigation[,]'" "'verif[ied]' false information regarding his []

account and that [defendant] 'deleted the entire tradeline' in response to his dispute

letter[,]" and that defendants "failed to adequately 'evaluate or consider' his

dispute." *Id.* Here, Warner's language is quite similar. She, too claims that Trans

Union "chose to 'verify' false information[,]" (Compl. ¶ 56), "inappropriately deleted

[Warner's] Pacific Union account[,]" (*id.*), and "did not evaluate or consider any of

[Warner's] information, claims or evidence[,]" (*id* ¶ 57).

Additionally, like in her § 1681e(b) claim, Warner fails to allege any facts supporting a reasonable inference of an injury. She merely restates her generalized allegation that she has "suffered damages, including, but not limited to, denial in attempts to refinance, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials." (Compl. ¶ 99.) Warner did not set forth sufficient facts from which the court can reasonably infer that Trans Union violated her rights under 15 U.S.C. § 1681i. *See Green*, 2021 WL 4244779, at *4-5.

## IV.  RECOMMENDATION

For the reasons stated above, the undersigned recommends that the District Judge **GRANT** Trans Union's Motion for Judgment on the Pleadings under Fed. R. Civ. P. 12(c) and **DISMISS** Warner's claims **with prejudice**.

**SO RECOMMENDED** on February 11, 2025.

_____
BRIAN McKAY
UNITED STATES MAGISTRATE JUDGE

## NOTICE OF RIGHT TO OBJECT

A copy of these findings, conclusions, and recommendation will be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  To be specific, an objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).